IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 06-87 (EGS) |
| | ) |
| DAVID WEBB, | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

David Webb, by his attorney, David W. Bos, Assistant Federal Public Defender, hereby submits the following memorandum in aid of sentencing in this matter. For the reasons outlined in more detail below, Mr. Webb respectfully requests that the Court sentence Mr. Webb to a period of 63 months in prison. In support of this request, counsel states:

1. Mr. Webb appears before the Court for sentencing after having pled guilty to one count of transporting child pornography, in violation of 18 U.S.C. § 2252, and one count of possession of child pornography, in violation of title 18 U.S.C. § 2252(a)(4).

2. Mr. Webb was arrested in this case on February 22, 2006, after having been charged in a criminal complaint with transporting several images of child pornography to an undercover F.B.I. in Virginia and Washington, D.C. After his arrest, Mr. Webb immediately accepted responsibility for his conduct and agreed to plead guilty. Because the case involved three different jurisdictions, however, the plea agreement was not finalized until June of this year. Mr. Webb has been held at the Correctional Treatment Facility since his arrest and has incurred no disciplinary actions while housed at CTF.

Although the files sent to the undercover F.B.I. agent and later found on Mr. Webb's computer were graphic, Mr. Webb has never been involved in the production of child pornography. Nor has Mr. Webb ever committed any actual sexual abuse or sexual exploitation of a minor.

**DISCUSSION**

**I.      THE POST BOOKER SENTENCING FRAMEWORK**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, __ U.S. __, 2005 WL 50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Among the matters that §3553(a) requires the sentencing judge to consider are:

> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> (I) issued by the Sentencing Commission ....
> (5) any pertinent policy statement--
> (A) issued by the Sentencing Commission ....
> 18 U.S.C. § 3553(a)(4), (5).

Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed

> (A) to reflect the seriousness of the offense, to promote respect
> for the law, and to provide just punishment for the offense;

>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in

determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular following Booker, courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

With regard to appropriate methodology in determining the appropriate sentence post-Booker, the Defendant urges the Court to adopt the approach delineated by District Court Judge Adelman in United States v. Smith, Case No. 02-CR-163.  First, the Court must determine the applicable advisory guideline range.  Second, the Court must determine whether, pursuant to the Sentencing Commission's Policy Statements, any departures from the advisory guideline range apply.  Finally, the Court must determine the appropriate sentence in light of the factors set forth in 18 U.S.C. §3553(a).

Advisory Guideline Range

The Probation Department, using the 2005 edition of the Sentencing Guidelines Manual, has concluded that the Adjusted Offense Level in Mr. Webb's case is 32 and that Mr. Webb's Criminal History Category is III, resulting in an advisory sentencing range for imprisonment of 151 to 188 months.

The Defendant does not dispute the computation of his Criminal History Category calculation. The Defendant, however, disputes the offense level computation in this case. The correct offense level in this case is 24.  Therefore, the correct advisory sentencing range for imprisonment in Mr. Webb's case is 63-78 months, in Zone D of the Sentencing Table.

A. Offense Level Computation

As the Court knows, the Defendant pled guilty in this case pursuant to a detailed written Plea Agreement, drafted by the Government, in which both sides made a series of both legal and factual concessions. Although the Plea Agreement does not contain an offense level computation, the Plea Agreement contains specific factual admissions to which both the Government and the Defendant agreed as a condition of the Defendant accepting the Government's plea offer. The relevant factual concessions in this case are found in paragraph 4 of the Plea Agreement, which states:

> 4. Your client agrees and will acknowledge that, pursuant to Section 1B1.3 of the Sentencing Guidelines, your client 1) transmitted nine images of child pornography from West Virginia to Dulles, Virginia, on January 25, 2006, one of which was identified by the National Center for Missing and Exploited Children as a known juvenile victim; 2) transmitted seventy images of child pornography from West Virginia to the District of Columbia on February 16, 2006, eight of which were identified by the National Center for Missing and Exploited Children as known juvenile victims; and 3) transmitted seventeen images of child pornography from West Virginia to the District of Columbia on February 19, 2006, one of which was identified by the National Center for Missing and Exploited Children as a known juvenile victim. Your client also agrees and will acknowledge that your client possessed in West Virginia at least 150, but less than 300, still images of child pornography, 96 of which were identified by the National Center for Missing and Exploited Children as known juvenile victims, and one video contained known juvenile victims.

The Defendant agrees with the Government and the Probation Department that U.S.S.G. §2G2.2 is the applicable guideline section in this case, and that the Base Offense Level in this case is therefore 22. The Defendant further agrees, based on factual concessions to which he agreed in Paragraph 4 of the Plea Agreement, a two-level enhancement pursuant to §2G2.2(b)(6) (use of a computer to facilitate the offense) applies. Finally, based on the concession to which he agreed in Paragraph 4 of the Plea Agreement, the Defendant agrees that a three-level

enhancement pursuant to §2G2.2(b)(7)(B) applies. The Defendant, however, objects to the application §2G2.2(b)(2)(material involved a prepubescent minor) and §2G2.2(b)(3)(C)(material was distributed to a minor), the application of which increase the Defendant's offense level *seven* levels, and increase his sentencing range under the advisory guidelines from 63-78 months to 135-168 months..

     Nowhere in the Plea Agreement does the Defendant agree to the application of these two adjustments. More important, nowhere in the Plea Agreement does the Government indicate its intent to seek the application of these adjustments. As noted above, the Plea Agreement containing the factual concessions made by each party to the agreement was carefully drafted *by the Government*. The Plea Agreement sets forth a detailed factual predicate for the application of §2G2.2(b)(6) by stating that on three different occasions the Defendant "transmitted images of child pornography" from West Virginia to Virginia and Washington, D.C. The Plea Agreement further sets forth a detailed factual predicate for the application of §2G2.2(b)(7)(B) (offense involved at least 150 images, but fewer than 300 images), "[y]our client agrees and will acknowledge that your client possessed in West Virginia at least 150, but less than 300, still images of child pornography," *even though* the factual proffer in support of the Plea Agreement provided a factual basis for the application of §2G2.(b)(7)(C)(offense involves at least 300 images, but fewer than 600 images). At the time it drafted and negotiated the Plea Agreement, the Government therefore knew how to draft the Plea Agreement to ensure that there was a factual basis for the adjustments it believed applied in this case. The Plea Agreement, however, is completely silent with regard to any factual predicate for the applicability of U.S.S.G. §§ 2G2.2(b)(2) and (3)( C ).

As noted above, ignoring the legally binding concessions made by each party in the Plea Agreement, the Government nevertheless takes the position that both U.S.S.G. §§ 2G2.2(b)(2) and (3)(C ) apply in this case because there is a factual basis on which the apply the adjustments. Yet, the Government *concedes* that even though there is a factual basis for the application of §2G2.(b)(7)(D)(300-600 images), §2G2.2(b)(7)(B) (150-300 images) is the proper adjustment in this case. The logical inconsistency of its position is therefore readily apparent.

The Government's reliance on the factual proffer in support of the Defendant's guilty plea, see Government Memorandum in Aide of Sentencing p. 13, is misplaced. The factual proffer, again drafted by the Government, explicitly states that "[t]he limited nature of this proffer is to demonstrate that there exists a sufficient legal basis for [the Defendant's] plea of guilty." Nowhere in the proffer does it state the Government intended to use the factual proffer as a basis to apply any adjustments or Specific Offense Characteristic *for sentencing purposes*. Indeed, as noted above, with regard to the number of images found on the Defendant's computer, the factual proffer is *inconsistent* with Plea Agreement, yet the Government concedes the Plea Agreement, not the factual proffer, is controlling for sentencing purposes.

Moreover, the Government is simply wrong when it argues that notwithstanding the Plea Agreement, the Government can now seek any enhancement it chooses. See, Government's Memorandum in Aide of Sentencing, p. 13 ("Nowhere in [Paragraph 4], nor anywhere else in the Plea Agreement, is there any indication that these are the only applicable enhancements.") As the Court well knows, "[g]eneral principles of contract law define the government's obligations under the agreement, looking to the express language and construing any ambiguities against the government as the drafter of the agreement." United States v. Guzman, 318 F.3d 1191 (10th Cir.

2003). And, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. Santobello v. New York, 404 U.S. 257, 262 (1971).

Under the instant Plea Agreement, the only two enhancements the Government sought to include in the Plea Agreement were 1) that a computer was used to facilitate the offense, U.S.S.G. §2G2.2(b)(6); and 2) the Defendant possessed more than 150 but less than 300 images is child pornography, U.S.S.G. §2G2.2(b)(7)(B). See, Plea Agreement, Paragraph 4. The Government' failure to include in the Plea Agreement facts necessary to support the application of U.S.S.G. §2G2.2(b)(3)(C) and §2G2.2(b)(2), coupled with the fact the Government *specifically included* in the Plea Agreement facts necessary to support the application of U.S.S.G. §2G2.2(b)(6)(use of a computer to facilitate the offense), U.S.S.G. §2G2.2(b)(7)(B)(150-300 images) and *not* U.S.S.G. §2G2.2(b)(7)(C)(300-600 images), directly influenced the Defendant's decision to accept the Government plea offer. Any ambiguity, and the Defendant submits there is none, should be "construed against the Government." Guzman, 318 F.3d at 1195.

Because there is no legal basis to apply either §2G2.2(b)(2) or U.S.S.G. §2G2.2(b)(3)(C), the correct adjusted offense level in this case is 24.

B. Criminal History Computation

The Defendant does not object to the Criminal History Computation, but notes that all five criminal history points in this case stem from a single misdemeanor conviction for which Mr. Webb served a total of five days in jail, followed by 18 months of supervised probation. Mr. Webb therefore is an atypical Criminal History Category III offender.

C. Potential Departure Considerations Under the Advisory Guidelines

As noted above, among the matters that §3553(a) requires the sentencing judge to consider with regards to the advisory guidelines are:

> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> (I) issued by the Sentencing Commission ....
> (5) any pertinent policy statement--
> (A) issued by the Sentencing Commission ....
> 18 U.S.C. § 3553(a)(4), (5).

Imposition of Sentence

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

1. Nature of the Offense

Mr. Webb in no way intends to diminish the seriousness of this offense but notes he has

never been involved in the production of child pornography, and as noted above has never committed any actual sexual abuse or sexual exploitation of a minor.

2. Character of the Defendant

As noted in the Pre-Sentence Report, Mr. Webb endured an extraordinary traumatic childhood. He was raised by alcoholic parents in a home were he witnessed numerous instances of domestic violence. When he was only fifteen years old, Mr. Webb's mother committed suicide, forcing Mr. Webb to leave his home and live with his brother in Colorado. This incident resulted in Mr. Webb being diagnosed, years later, with Post-Traumatic Stress Disorder.

Notwithstanding his tumultuous childhood, Mr. Webb managed to obtain his GED and enlist in the Navy. He served in the Navy for five years, three years on active duty and two years in the reserves. He was stationed in Beriut Lebanon when terrorists attacked the Marine barracks and killed more than 200 Marines in 1983. In 1985, Mr. Webb was Honorably Discharged from the Navy.

For the last four years, Mr. Webb has been receiving treatment at the United States Veterans Hospital in Clarksburg, West Virginia for bi-polar disorder, clinical depression and Post-Traumatic Stress Disorder. His last visit to the hospital for mental health treatment occurred just a few weeks before his arrest in this case.

Mr.Webb has only one prior conviction for attempting to obtain pain medication with an altered prescription. Indeed, all 5 points of his criminal history score relate to this case, in which he served only 5 days in prison, followed by approximately 18 months of supervised probation, which he served without incident. Mr. Webb's "criminal history" is extremely limited and therefore atypical of a Criminal History Category III offender.

3. Needs of the Public

Although there is no question Mr. Webb must be held accountable for his actions, the needs of the public are more than satisfied by a 63 month sentence in this case. This is not a case in which Mr. Webb was engaged in large scale trafficking or the production of child pornography. Nor is this case in which Mr. Webb ever abused or sexually exploited a minor. As the Court is aware, Mr. Webb will not receive any treatment for his conduct by the Bureau of Prisons' Sex Offender Program until he is within three years of his release. Upon his release, Mr. Webb will have to register as a sex offender, and is movements and conduct will be very closely monitored by both law enforcement and his federal probation officer.

4. Consideration of Guidelines

As the Court well knows, congress' primary purpose in enacting the Sentencing Guidelines was to remove disparities in sentencing and ensure that more egregious conduct is punished more severely than less egregious conduct. As noted earlier, Mr. Webb has never been involved in the production of child pornography and has never committed any actual sexual abuse or sexual exploitation of a minor. Yet, the sentence urged by the Government will be nearly the same as sentences imposed by other courts in cases with far more egregious conduct. See, United States v. Wright, 373 F.3d 935 (9th Cir. 2004)(180 month sentence imposed where defendant photographed himself engaging in "actual and simulated sexual intercourse, including genital-genital, oral-genital and anal-genital actual and simulated intercourse" with his 11 month old son); United States v. Sharpley, 399 F.3d 123 (2nd Cir. 2005)(180 month sentence impose where defendant, who had previously been convicted of first degree sexual abuse, photographed himself having sex with pre-teenage boy); United States v. Rast, 293 F.3d 735 (4th Cir. 735)(120

month sentence imposed where father video-taped woman performing "a sex act" on his 12 year old son); <u>United States v. Simmons</u>, 343 F.3d 72 (2nd Cir. 2003)(168 month sentence imposed where defendant video taped himself sexually abusing unconscious girl); <u>United States v. Croxford</u>, 324 F. Supp. 2d 1230 (D. Utah 2004)(Cassell)(148 month sentence imposed where foster father photographed female foster children and posted photographs on the internet). The "need to avoid unwanted sentencing disparities" therefore warrants an 63 month sentence in this case.

    For the forgoing reasons, I urge the Court to sentence Mr. Webb to a period of imprisonment of 63 months.

                                      Respectfully submitted,

                                      A.J. KRAMER
                                      FEDERAL PUBLIC DEFENDER

                                      /s/

                                      David W. Bos
                                      Assistant Federal Public Defender
                                      625 Indiana Avenue, N.W., Suite 550
                                      Washington, DC  20004
                                      (202) 208-7500

**CERTIFICATE OF SERVICE**

I, David W. Bos, Assistant Federal Public Defender, hereby certify that a copy of the attached Sentencing Memorandum has been served on Katherine Connelly Esquire, Assistant United States Attorney, Office of the United States Attorney's Office, Judiciary Center Building, 555 Fourth Street, N.W., Washington, DC 20001.

/s/

David W. Bos
Assistant Federal Public Defender

**DATE:**