**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 06-87 (EGS)** |
| | ) | |
| **DAVID WEBB,** | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW
IN AID OF SENTENCING**

David Webb, by his attorney, David W. Bos, Assistant Federal Public Defender, hereby

submits the following Memorandum of Law in support of his position that 1) the Defendant

should be assessed only one criminal history point for his 2003 conviction from Randolph

County West Virginia and 2) pursuant to the Plea Agreement negotiated by the parties in this

case, the Court should not apply U.S.S.G. §§2G2.2(b)(2)(material involving prepubescent minor)

and (b)(3)(c)(material distributed to a minor) in the calculation of the Defendant's Offense Level.

1. Mr. Webb's 2003 Conviction and The Application of U.S.S.G. §4A1.1(b)

The Sentencing Order in the 2003 Randolph County case states, in relevant part:

The Defendant is hereby sentenced to one year Randolph County Jail on the charge of
Fraudulent Schemes and is further sentenced to six months in the Randolph County on
the charge of Attempted Possession of a Controlled Substance, said sentence being run
consecutive. . . Provided that the Defendant shall qualify, the Defendant shall be allowed
to serve the sentence imposed on home confinement with electronic monitoring by such
arrangements as are made by, at such costs and under the supervision of the Sheriff of
Randolph County.

Sentencing Order Dated November 3, 2003.

Consistent with the Sentencing Order, Mr. Webb served all but five days of the sentence in his home on home confinement.[1]

Notwithstanding the fact Mr. Webb was incarcerated for only *five days* on this sentence, the Probation Department, relying on United States v. Schomburg, 929 F.2d 505, (9th Cir. 1991), a case which never addressed the issue presented here, has concluded  Mr. Webb should be assessed two criminal history points for this conviction, pursuant to U.S.S.G. §4A1.1(b)(add 2 points for each prior sentence of "imprisonment" of at least sixty days) .  The Probation Department's analysis and conclusions, however, are simply incorrect, and Mr. Webb should be assessed only one criminal history point for this case, pursuant to U.S.S.G. §4A1.1(c)(add 1 point for each prior sentence of "imprisonment" that is less than sixty days).

As the Seventh Circuit noted in  United States v. Phipps, 68 F.3d 159,162 (7th Cir. 1995), the term "[i]mprisonment is a word used throughout the Guidelines to denote time in a penal institution." Id. at 162. See, e.g., U.S.S.G. §5F1.2 ("Home detention may be imposed as a condition of probation or supervised release, *but only as a substitute for imprisonment*."); U.S.S.G. §5B1.3(e)(2)(same). Indeed, all four Circuits that have addressed the issue of whether or not home detention may be characterized as "imprisonment" for Guideline purposes have held that "home detention does not equal imprisonment for §4A.1. purposes." United States v. Gordon, 135 F.3d 135 (5th Cir. 2003); United States v. Phipps, 68 F.3d 159,162 (7th Cir. 1995)(under the Guidelines, "[home detention] is not 'imprisonment' but is a 'substitute for imprisonment.'") ; United States v. Smith, 41 Fed.Appx. 134 (9th Cir. 2002)(unpublished)(Home

---

[1]In early 2004, Mr. Webb was incarcerated for five days because he could not pay the Home Confinement costs.

confinement is not equivalent to imprisonment); <u>United States v. Simmons</u>, 165 F. 3d 22 (4th Cir. 1998)(the term imprisonment is used throughout the Guidelines to denote time in a penal institution).

The Fifth Circuit recently addressed this precise issue in <u>United States v. Gordon</u>, 346 F.3d 135 (5th Cir. 2003). There, the defendant objected to the assessment of two criminal history points for a prior sentence in which the defendant had been sentenced to "five years imprisonment . . . [all of which was] suspended for six months of 'Intensive Supervision/House Arrest Program and four and one-half years of probation." <u>Id.</u> at 136. After conducting a thorough review of the Guidelines and the applicable caselaw – including <u>United States v. Schomburg</u> (the case on which our Probation Department is relying) -- the Court concluded "[T]he Guidelines define a 'sentence of imprisonment' as a 'sentence of incarceration' and distinguish between 'imprisonment' and 'home detention . . . [therefore] . . . "home detention does not equal imprisonment for §4A1.1 purposes." <u>Id.</u> at 138-139. Agreeing with Fourth, Sixth, Seventh and Ninth Circuits – *every Circuit to address the issue* – the Fifth Circuit ruled "the district court committed plain error in assessing two points" for the prior sentence.

<u>United States v. Schomburg</u>, 929 F.2d 505 (9th Cir. 1991), the case on which the Probation Department relies, sheds no light on the issue presented here. In <u>Schomburg</u>, the defendant objected to the assessment of two criminal history points for a prior sentence in which the trial court sentenced him to sixty days in county jail, with a "recommend[ation] the sentence be served on a weekend work project." <u>Id.</u> at 506-507. Upholding the assessment of two criminal history points, the Ninth Circuit ruled that the sentencing court's "recommendation" that the sentence be served on a weekend work project was not binding on the county sheriff, and that the

defendant's "eligibility for the weekend work project was ultimately determined by the Deputy Sheriff, who could have imprisoned [the defendant] or not at [the Sheriff's] discretion." Id. at 507.  Therefore, because "the [sixty day] sentence, as pronounced by the court at the outset, was a sentence of imprisonment subject to alteration at the Sheriff's discretion," it was proper to assess two criminal history points for this conviction. Id.

Even if this Court were to find that Schomburg sheds any light on this issue, even though the case did not involve a sentence with a home detention component, the prior sentence in this case is markedly different than the sentence at issue in Schomburg. As noted above, the Sentencing Order in Mr. Webb's case directed that  "[p]rovided that the Defendant shall qualify, the Defendant *shall* be allowed to serve the sentence imposed on home confinement . . ." Unlike the jailer in Schomburg, the Sheriff of Randolph County had no discretion to alter the sentence imposed in Mr. Webb's case. Indeed, as the Probation Department acknowledges, had Mr. Webb violated "the terms of [his] home confinement . . . *the sentencing judge* has the authority to remand the inmate to serve the rest of their sentence in the county jail." Office of Probation Sentencing Letter, December 8, 2006.  Schomburg therefore is distinguishable on both the fact and the law.

For the above reasons, Mr. Webb should receive only one criminal history point for the 2003 Randolph County sentence.[2]

_____

[2]With only one criminal history point assessed for the 2003 sentence, U.S.S.G. §4A1.1(e) precludes the assessment of the one criminal history point assessed in paragraph 45 of the PSR. Therefore, the Defendant has 3 total criminal history points, which establishes a criminal history category of II, not III as presently listed in the PSR.

2.  Application of  U.S.S.G. §§2G2.2(b)(2) and (b)(3)(   )

    As the Court well knows, in construing plea agreements "[g]eneral principles of contract law define the government's obligations under the agreement, looking to the express language and *construing any ambiguities against the government as the drafter of the agreement*." United States v. Guzman, 318 F.3d 1191, 1196 (10th Cir. 2003)(emphasis added) . "This is done for a variety of reasons, including the fact that the Government is usually the party that drafts the agreement, and the fact that the Government ordinarily has certain awesome advantages in bargaining power." United States v. Ready, 82 F.3d 551 (2nd Cir. 1996). Accord, United States v. Carnine, 974 F.2d 924 (7th Cir. 1992); United States v. Giorgi, 840 F.2d 1022 (1st Cit. 1988); United States v. De la Fuente, 8 F.3d 1333 (9th Cir. 1993).  "Strict fulfilment of prosecutorial promises emanates as a requirement from the significant consequences of a guilty plea – the waiver of important constitutional rights and the 'adjudicative element' that is inherent in the plea. United States v. Bowler, 585 F.2d 851, 853 (7th Cir. 1978), citing, Santobello v. New York, 404 U.S. 257 (1971). As a result, "[a]s with any contract in which the drafting party has an overwhelming superior or bargaining position, plea agreements are construed strictly against the government." United States v. Gottesman, 122 F.3d 150, 152 (2nd Cir. 1997). Indeed, "both to protect the plea bargaining defendant from overreaching by the prosecutor and to insure the integrity of the plea bargaining process, the 'most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining. Bowler 585 F.2d at 854.

    In determining whether or not a plea agreement has been violated, courts "look to what the defendant reasonably understood when he entered his guilty plea." United States v. Greenwood,  812 F.2d 632 (10th Cir. 1987)(emphasis added);  United States v. Quan,  789 F.2d

5

711 (9th Cir. 1988); <u>United States v. Fields</u>, 766 F.2d 1161 (7th Cir. 1981) <u>United States v.</u>

<u>Carbone</u>, 738 F.2d 45 (2nd Cir. 1984). And, a plea agreement "is not an appropriate context for

the Government to resort to a rigidly literal approach in the construction of language."

<u>Greenwood</u> at 635. <u>See</u> <u>also</u>, <u>United States v. Bowler</u>, 585 F.2d 851 (7th Cir. 1978). Finally,

"when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that

it can be said to be part of the inducement or consideration, *such promise must be fulfilled*.

<u>United States v. Scott</u>, 455 F.3d 1188, 1191 (10th Cir. 2006)(emphasis original), <u>citing</u>

<u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971).

    The precise issue presented in the instant case was recently addressed by the 10th Circuit.

In <u>United States v. Scott</u>, 455 F.3d 1188 (10th Cir. 2006) the defendant pled guilty pursuant to a

written plea agreement to one count of transportation of a juvenile in interstate commerce for the

purposes of prostitution. In the plea agreement, the defendant "admitted that two [specific

offense enhancements] were applicable – two levels because the victim was between the ages of

12 and 16, and four levels because fraud had used to entice the victim into prostitution . . . [and] .

. . [t]he Government agreed to a two level decrease for acceptance of responsibility. . ." <u>Id</u>. at

1189. After the plea hearing, but before the sentencing, the trial court alerted the parties that it

wanted to consider the possibility of two additional sentencing enhancements. Notwithstanding

the written plea agreement, the Government advocated for the offense level increases suggested

by the trial court, and the court eventually applied the enhancements at sentencing. <u>Id</u>.

    On appeal, the Court found the Government "clearly breached" the plea agreement. <u>Id</u>.

The Court reaffirmed the "fundamental and dispositive principle" stated by Chief Justice Burger

in <u>Santobello v. New York</u>, 404, U.S. 257 (1971) that "'when a plea rests in any significant

degree on a promise or agreement of the prosecutor, so that it can be said to be part of the

inducement or consideration, *such promise must be fulfilled.'"* Scott at 1191, citing Santobello at

262 (emphasis original).

The Court began its analysis by noting "[i]t is well settled that we must interpret the

[plea] agreement according to the defendant's reasonable understanding of its terms." Id. at 1190.

See, also, United States v. Hand, 913 F.2d 854 (10th Cir. 1990); United States v. Greenwood, 812

F.2d 632 (10th Cir. 1987).  The Court then noted:

> the plea agreement provided that based upon 'the information that is known to the parties
> on the date that this agreement is executed, the positions they expect to take at sentencing
> with respect to the United States Sentencing Guidelines will include that: 1) the offense
> occurred before April 30, 2003; 2) the offense involved a commercial sex act and the use
> of coercion; 3) the victim's age was between 12 and 16; and 4) the defendant should
> receive a 2 level downward adjustment for acceptance of responsibility.
>          Defendant contends that the agreement was breached because *the government's
> agreement to these terms clearly implied that the government would not argue for
> other sentence enhancing factors, or at least that such an inference should be drawn
> because that was his reasonable expectation from the agreement.* We agree that this is
> the plainly reasonable interpretation of the agreement.

Scott 455 at 1190 (emphasis added).

Citing Santobello and its progeny, the Court ruled that by arguing for the two

enhancements not addressed in the plea agreement, the government "clearly breached" the plea

agreement. The Court rejected the government's assertion that "[the government] was not

precluded from arguing for the additional enhancements" under the plea agreement, and instead

ruled that "arguing for the additional sentencing enhancements . . . was a clear violation of the

implicit obligation of the government not to do so." Id. at 1192.  The Court specifically found the

Government could not "rely upon a rigidly literal construction of language of the agreement" to

circumvent the defendant's reasonable understanding of the agreement. Scott at 1191, citing,

United States v. Hand 913 F.2d 854 (10th Cir. 1990).

Turning to the instant case, without citing any caselaw to support its position,[3] and in complete contradiction to the above-cited line of cases, the Government argues that it may seek enhancements pursuant to §2G2.2(b)(2) and §2G2.2(b)(3) because "nowhere in [Paragraph 4], nor anywhere else in the plea agreement, is there any indication that these are the only applicable enhancements." Government's Memorandum in Aide of Sentencing at p. 13. This is the precise argument rejected by the Court in Scott.

As the Supreme Court noted in Santobello v. New York, 404 U.S. 257 (1971), "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262. This includes not only explicit promises in plea agreement not to seek certain enhancements, but also instances where, as here, the Defendant has a "plainly reasonable interpretation of the agreement" that the government will "*not* argue for other enhancements." Scott at 1190, (emphasis original). See also, United States v. Bowler 585 F.2d 851 (7th Cir. 1978).

Finally, with regard to the Court's inquiry at the last hearing as to whether the Defendant should be allowed to simply withdraw his plea, the Court should be mindful of Justice Douglas admonition in Santobello "[i]n choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental

---

[3]As the party seeking the enhancement, the Government "bears the burden with respect to sentencing enhancements." United States v. Guzman, 318 F.3d 1191, 1198 (10th Cir. 2003). Nor is it relevant that, as in the instant case, there is no evidence that the Government is acting in bad faith in seeking these two enhancement. "The effect of a broken plea agreement is no less serious when committed in the purest good faith. . . . [s]ee Santobello v. New York, 404 U.S. 257 (1971)('that the breach of agreement was inadvertent does not lessen its impact')." United States v. Greenwood, 812 F.2d 632, 635, n. 3 (10th Cir. 1987).

rights flouted by the prosecutor's breach of a plea bargain are those of the defendant, not of the

State." <u>Id</u>. at 267.


                            Respectfully submitted,

                            A.J. KRAMER
                            FEDERAL PUBLIC DEFENDER


                                  /s/
_____
                            David W. Bos
                            Assistant Federal Public Defender
                            625 Indiana Avenue, N.W., Suite 550
                            Washington, DC  20004
                            (202) 208-7500