UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  06-87 (EGS) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID WEBB | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
SUPPLEMENTAL MEMORANDUM OF LAW
IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia,  respectfully submits this response to Defendant's Supplemental Memorandum of Law in Aid of Sentencing ("Supplemental Memo").

I. BACKGROUND

The defendant was charged in a two-count information with Transportation or Shipping Material Involving Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and 2256, and Possession of Material Involving Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5) and 2256.  On June 28, 2006, the defendant pled guilty to Transportation or Shipping Material Involving Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and 2256, and Possession of Material Involving Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5) and 2256.[1]  In so doing, the defendant signed a plea letter and a written proffer ("Plea Agreement.")  Sentencing was set for September 29, 2006.  On September 21, 2006, defendant filed an unopposed Motion to Continue Sentencing.  The Motion was granted, and sentencing

---

[1] The offense of Possession of Material Involving Child Pornography occurred in the Northern District of West Virginia.  However, the defendant agreed to waive venue and plead guilty to that offense before this Court.

was reset for October 20, 2006.

On October 13, 2006, the undersigned filed the Government's Motion for Guidelines Credit and Memorandum in Aid of Sentencing. On October 19, 2006, defendant filed his Memorandum in Aid of Sentencing ("Initial Memo"). In this memo, the defendant indicated that he "does not dispute the computation of his Criminal History Category calculation." Initial Memo at 4. Despite this assertion, at the defendant's sentencing on October 20, 2006, defense counsel requested a continuance, arguing that defendant's criminal history category was incorrectly calculated, and that the government waived its right to seek increases to the defendant's base offense level pursuant to U.S.S.G. § 2G2.2(b)(2) because the material involved a prepubescent minor, and U.S.S.G. § 2G2.2(b)(3)(C) because the material was distributed to a minor. At the October 20, 2006 hearing the Court indicated that it did not believe that the government waived its right to request these increases, but agreed to permit defense counsel additional time to research these issues. Sentencing was continued to December 15, 2006.

On December 12, 2006, the Court *sua sponte* reset the sentencing for March 23, 2007. At the March 23, 2007 sentencing, defense counsel again raised the issue of whether or not the base offense level increases apply, and again objected to the defendant's criminal history. The Court indicated it wanted additional time to consider the offense level matter, and ordered the parties to brief the issue. Defendant then filed his Supplemental Memo on April 19, 2007. The government now seeks to respond to defendant's filing.

II.     **ARGUMENT**

In his Initial and Supplemental Memos, defendant essentially makes three arguments: 1) that the defendant's criminal history was incorrectly calculated by the Presentence Report

2

Writer, 2) that the defendant's offense level should not include increases for material involving a prepubescent minor, and for distributing material to a minor, and 3) that the sentence requested by the government "will be nearly the same as sentences imposed by other courts in cases with far more egregious conduct." Initial Memo at 11.

Initially, the government notes that the defendant's positions on the matters in question in this case keep changing, thus demonstrating the inherent inconsistencies in the defendant's arguments. First of all, in the defendant's September 11, 2006 response to the Presentence Report, he did not make any claims regarding the alleged overstatement of his criminal history. Nor did the defendant make any such claim in his initial sentencing memo, filed on October 19, 2006. However, at defendant's scheduled sentencing the very next day, defense counsel suddenly raised this issue for the first time. Furthermore, in the defendant's September 11, 2006 response to the Presentence Report, he claimed that an adjustment pursuant to U.S.S.G. § 2G2.2(b)(6) (use of a computer to facilitate the offense) did not apply. However, in defendant's Initial Memo, filed one month later, he admits that "a two-level enhancement pursuant to § 2G2.2(b)(6) . . . applies." Initial Memo at 5.

    A.    <u>Criminal History Calculation</u>

Defendant contests the assessment of three points for his prior conviction and sentence in West Virginia case 03-F-58. This claim that his criminal history category is overstated is without merit. To make this determination, the Court need only look to the United States Probation Office for the Northern District of West Virginia for guidance. That is the probation office that would have jurisdiction over this issue had the defendant not waived venue and pled guilty in D.C. According to United States Probation Officer Michael Penders, the United States

Probation Office for the Northern District of West Virginia treats sentences of home confinement like the one imposed upon defendant here as sentences of imprisonment for purposes of U.S.S.G. § 4A1.1(b). As the Ninth Circuit noted in United States v. Schomburg, 929 F.2d 505, criminal history points are based on the sentence pronounced, not the length of time actually served. In case 03-F-58, defendant was sentenced to "one year Randolph County Jail . . . ." Defendant was, however, permitted to serve the sentence on home confinement. Like the defendant in Schomburg, the defendant in the case now before the Court was required to qualify for home confinement, and the Sheriff of Randolph County was to supervise the confinement. Had he not qualified, he would have served the entire year in the jail.

  B.  Increases to Defendant's Base Offense Level

Prior to filing his Initial Memo, the defendant filed an objection to the Presentence Report, which states:

> pursuant to to Paragraph 4 of the Plea Agreement, the only adjustment to the base offense level in this case under U.S.S.G. § 2G2.2 is that Mr. Webb possessed at least 150, but less than 300, still images of child pornography, resulting in a 3 point adjustment to the base offense level. Therefore, the adjustments pursuant to U.S.S.G. § 2G2.2(b)(2) (material involved a prepubescent minor), (b)(3)(C) (material was distributed to a minor), and (b)(6) (computer used to facilitate offense) do not apply in this case.

See Defendant's September 11, 2006 letter, attached to Government's Motion for Guidelines Credit and Memorandum in Aid of Sentencing as Exhibit A. However, as noted above, in defendant's Initial Memo, he agrees that "a two-level enhancement pursuant to § 2G2.2(b)(6) (use of a computer to facilitate the offense) applies." Initial Memo at 5.

As the government has noted in its previous filings, paragraph 4 of the Plea Agreement reads as follows:

> Your client agrees and will acknowledge that, pursuant to Section 1B1.3 of the Sentencing Guidelines, your client: 1) transmitted nine images of child pornography from West Virginia to Dulles, Virginia, on January 25, 2006, one of which was identified by the National Center for Missing and Exploited Children as a known juvenile victim; 2) transmitted seventy images of child pornography from West Virginia to the District of Columbia on February 16, 2006, eight of which were identified by the National Center for Missing and Exploited Children as known juvenile victims; and 3) transmitted seventeen images of child pornography from West Virginia to the District of Columbia on February 19, 2006, one of which was identified by the National Center for Missing and Exploited Children as a known juvenile victim. Your client also agrees and will acknowledge that your client possessed in West Virginia at least 150, but less than 300, still images of child pornography, 96 of which were identified by the National Center for Missing and Exploited Children as a known juvenile victims, and one video which contained known juvenile victims.

See Plea Agreement, attached to Government's Motion for Guidelines Credit and Memorandum in Aid of Sentencing. Nowhere in this paragraph, nor anywhere else in the plea agreement, is there *any indication* that these are the only applicable enhancements. Furthermore, the proffer agreed to and signed by the defendant makes very clear that an adjustment to the defendant's base offense level pursuant to U.S.S.G. § 2G2.2(b)(3)(C) (material was distributed to a minor). The proffer establishes that the defendant distributed images to an undercover agent who was posing as a 14 year old boy. The notes following U.S.S.G. § 2G2.2(b)(3)(C) establishes that this adjustment applies to distribution of child pornography to an undercover officer who as posing as a minor: "'Minor' means . . . an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years." U.S.S.G. § 2G2.2 n. 1.

It is also the government's position that an adjustment pursuant to U.S.S.G. § 2G2.2(b)(2) (material involved a prepubescent minor or a minor who had not attained the age of 12 years) applies. In United States v. Deaton, the Court ruled that imposition of a two level adjustment pursuant to U.S.S.G. § 2G2.2(b)(2) is appropriate even without independent proof of the

children's ages. 328 F.3d 454 (8th Cir. 2003). The Court held that "[t]he pictures themselves support the district court's determination that the images were plainly of children under age 12, and depicted actual children." Id. at 456. The government plans to introduce some of the images at the sentencing in this case, so the Court will have the opportunity to determine for itself if the images depict actual children under the age of 12.[2]

Defendant, in both his oral arguments before this Court, and his pleadings, makes much of the fact that the Plea Agreement in this case was drafted by the government. Defendant fails to acknowledge that he *signed* the plea agreement, without any indication that he was displeased with its content. Furthermore, defense counsel admitted at the October 20, 2006 hearing on this matter that he did not raise these issues with the government prior to entering the plea agreement. Thus, while defense counsel now claims that the plea agreement has been violated, he admitted *on the record* that there was never any discussion or agreement about these issues. In addition, the language of the plea agreement supports the government's position, as it states "[t]his letter sets forth the entire understanding between the parties and constitutes the complete plea agreement . . ." Plea Agreement at ¶ 12, and [t]here are no other agreements, promises, understandings or undertakings between [the defendant] and this Office." Plea Agreement at ¶ 14.

Defendant also claims that the government's agreement that defendant should only be held liable for 150 to 300 images, instead of 300 to 600 images, is logically inconsistent with its position regarding the enhancements. In fact, the government would argue exactly the opposite.

---

[2] Defense counsel asked to view the images after the defendant entered his guilty plea, and on October 4, 2006, defense counsel viewed the images which will be presented to the Court in chambers prior to sentencing.

Defense counsel and government counsel discussed the number of images prior to the sentence, and negotiated the lower number. Because the final agreement was to fewer images than was stated in the proffer, and thus was *different* from what was in the proffer, the government specifically noted this agreement in the plea letter. However, there was *no* such agreement with respect to the age of the children involved, or the fact that the defendant thought he was communicating with a minor.

Each time the defendant has raised these issues in Court, the government has informed both the defendant and the Court that if the defendant feels that he signed the plea agreement without fully understanding the potential sentence, the proper remedy would be for the defendant to withdraw his plea. The government also indicated that it would not oppose such action, despite the fact that it is under no obligation to waive its right to oppose such a withdrawal. However, the defendant has stated that he does not want to withdraw the plea. In essence, the defendant is trying to have it both ways: i.e. arguing that he was unaware that the base offense level increases would apply, yet maintaining that he still wants to accept the plea.

The government's plea agreement does not provide the defendant's base offense level, or any computations regarding a potential guideline range. This was not an oversight on the government's part. It was a conscious decision designed to avoid exactly this situation: a situation in which a defendant claims certain adjustments calculated by the Presentence Report Writer do not apply.

Finally, as the Court is well aware, the defendant was informed during the Rule 11 colloquy what the statutory maximum sentence was, and he was also told that no one knew what the applicable guideline range would be. Furthermore, the defendant acknowledged during the

Rule 11 colloquy that no promises as to what his final sentence would be had been made to him.[3]

    C.    <u>Severity of Defendant's Conduct</u>

Defendant's assertion that the sentence recommended by the Government is too high because it is comparable to sentences imposed by other courts for "far more egregious conduct" is similarly without merit. First of all, the defendant in the case now before the Court has a criminal history category of III, which obviously changes his sentencing guidelines range. In at least one of the cases cited by the defendant, the party had a criminal history category of I.

Essentially defendant argues that he should receive a lower sentence because (according to the defendant) he "has never been involved in the production of child pornography . . . or committed any actual sexual abuse or sexual exploitation of a minor." Defendant's Memo at 2. The Eight Circuit specifically rejected just such an argument in <u>United States v. Grinbergs</u>, 470 F.3d 758 (8th Cir. 2006), stating that a departure was not justified

> by the fact that [the defendant] had never actively engaged in sexual activity with children, that he had never produced pornography, or that he might be considered unlikely to become a sexual predator in the future. Such offenses are punished under separate provisions of the guidelines. *Compare* U.S.S.G. § 2G2.2 *with* U.S.S.G. §§ 2G2.2.2, 2A3.2. There could be no concept of a heartland for an offense if the offense were deemed atypical simply because the defendant had not committed other crimes. Uncertainties about [defendant's] future conduct would not diminish the fact that [defendant] had provided a market for materials that

---

[3] These facts are particularly relevant in light of <u>United States v. Horne</u>, 987 F.2d 833 (D.C. Cir. 1993), in which the court held that a trial court did not err in denying an appellant's presentence motion to withdraw his guilty plea despite defense counsel's erroneous estimate of applicable Guidelines range, because appellant was informed during the Rule 11 colloquy of the statutory maximum sentence and was told that no one knew what the applicable Guideline range might be, Obviously the posture of the case now before the Court is distinguishable from <u>Horne</u>, particularly given that the government would not oppose defendant's withdrawal of his plea. However, <u>Horne</u> makes clear that if a defendant is aware of the maximum potential exposure he faces, and is informed by the Court that the ultimate sentence imposed is impossible to determine at the time of a plea, then his rights have not been violated.

directly victimize the children depicted.

470 F.3d at 761.  See also United States v. Barton, 76 F.3d 499 (2d Cir. 1996) (holding that defendant who received depictions of minors engaged in sexually explicit conduct not entitled to downward departure merely because he had not committed the additional crime of child abuse).

Finally, the government directs the Court to the Government's Motion for Guidelines Credit and Memorandum in Aid of Sentencing, which contains a discussion (including citations to the Congressional Record) of Congressional intent with relation to sentences for offenses involving child pornography.

## IV.    CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to 168 months of incarceration, with the special conditions listed in the Government's Motion for Guidelines Credit and Memorandum in Aid of Sentencing.

Respectfully submitted,

JEFFREY TAYLOR
United States Attorney

_____
Catherine K. Connelly
Assistant United States Attorney
Major Crimes Section, Mass.  Bar No. 649430
555 4th Street, N.W.  #4844
Washington, DC 20001
Phone: 616-3384
Fax: 353-9414

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, David Bos, this 24th day of April, 2007.

                                                            _____
                                                            Catherine Connelly
                                                            Assistant United States Attorney